# FOR PUBLICATION

**FILED & ENTERED**

**OCT 16 2013**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Gordian Medical, Inc., dba<br>American Medical Technologies<br><br>Debtor(s). | Case No.: 8:12-bk-12339-MW<br><br>CHAPTER 11<br><br>**MEMORANDUM DECISION AND ORDER** |

Samuel R. Maizel, Esq., Pachulski Stang Ziehl & Jones LLP, for Gordian Medical, Inc.

David J. Warner, Esq., Special Assistant United States Attorney, for the United States of America

WALLACE, J.

  Debtor and debtor in possession Gordian Medical, Inc. ("Gordian") has objected (the "Gordian Objection") to Claim 53, a second amended proof of claim in the amount of $17,786,989.40 filed by the Internal Revenue Service (the "Service") on December 6, 2012 — approximately three months and fifteen days after the August 22, 2012 bar date applicable to taxing authorities such as the Service.  The United States of America has moved on behalf of the Service (the "USA Motion") for leave to amend Claim 53 to clarify that the Service has a secured claim based upon a right of setoff against any payments owing to Gordian by another branch of the United States government, namely, the Centers for Medicare and Medicaid Service of the United States Department of Health and Human Services ("CMS").

Claim 53 is based on a transferee liability theory. The Service alleges in Claim 53 that Gordian is a successor in interest to American Medical Technologies, Inc. ("AMT") and is therefore liable for unpaid federal corporate income taxes, interest and penalties owed by AMT.[1] Gordian objects to Claim 53 in its entirety on the grounds that it was filed late, does not relate back to earlier, timely-filed proofs of claim and does not pass muster under the excusable neglect rule applied in *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The United States of America admits Claim 53 is late filed but argues that circumstances constituting excusable neglect are present here.

The USA Motion seeks leave to amend Claim 53 based upon the same excusable neglect considerations that are raised in its opposition to the Gordian Objection. Gordian rejoins that the Service's neglect is not excusable.

Consequently, a determination of the Gordian Objection and the USA Motion will require the Court to resolve the issue of whether the Service's failure to observe the August 22, 2012 bar date was the result of excusable neglect. The pertinent facts and the Court's application of the excusable neglect rule follow.

## FINDINGS OF FACT

AMT was formed in 1994 and engaged in the business of supplying wound care products to patients in long-term nursing facilities. Its principal place of business was 17575 Cartwright Road, Irvine, California 92614. Gerald Del Signore was AMT's sole shareholder, sole director and president.

Amazingly, AMT never filed a federal corporate income tax return nor did it pay any federal corporate income taxes during the entire period running from its inception in 1994 through 2007. This was not because AMT's revenue and income were *de minimis* or insignificant.[2] To the contrary, the evidence before the Court indicates AMT was receiving gross receipts in excess of $35 million per year and had net profits in excess of $1 million per

---

[1] *Cf.* I.R.C. § 6901.
[2] The Court hastens to point out that even having zero gross income or taxable income does not relieve a corporation of the obligation to file a federal corporate income tax return. Treas. Regs. § 1.6012-2(a).

year in or around 2007.

On or about March 31, 2007, AMT sold all its assets with the exception of then-existing accounts receivable to Gordian in exchange for a $2 million promissory note (that was never paid and was later cancelled). Gordian's bankruptcy petition shows that Gordian's stock is owned one third by Gerald Del Signore, one third by his wife Jean Del Signore and one third by his son Joseph Del Signore. Like AMT, Gordian is engaged in the business of supplying wound care products.

Gordian continued to use the same staff and sales force that AMT had used in providing wound care supplies.

The Service opened an audit of AMT in 2010. In early 2011 Revenue Agent David N. Fein of the Small Business/Self-Employed Operating Division, Examinations Unit, California Area, Santa Ana Territory, Group 8 summoned records of AMT bank accounts in an attempt to reconstruct AMT's books and records for the 2006 through 2011 tax years. Sometime during the course of the audit AMT notified the Service of its asset sale to Gordian and provided copies of the underlying purchase and sale agreement to Mr. Fein.

Gordian filed its chapter 11 petition on February 24, 2012. The filing was precipitated by the withholding by CMS of approximately $9.4 million in payments for wound care products supplied by Gordian.[3] Gordian later characterized the dispute with CMS as the central issue in the case, writing that "[t]he resolution of its issues with CMS is so fundamental that the Debtor is unable to formulate a plan of reorganization until it is ascertained whether, and what, CMS will pay on account of the Debtor's claims for dressings provided to patients with G-tubes."[4] The magnitude of the proof of claim filed by CMS — $76,375,729.67 — supports this analysis.[5]

Gordian's petition and all its subsequent pleadings prominently identify "American Medical Technologies" as a dba of Gordian. In the case of the petition, this dba is listed directly below Gordian's name on the first page and is hard to miss even on cursory inspection. In the subsequent pleadings the "American Medical Technologies" dba is shown

---

[3] Status Report (Docket # 191), April 11, 2012 at page 1, lines 22-27.
[4] *Id.* at page 4, lines 11-14.
[5] Claim 51-2 of the United States of America on behalf of the U.S. Department of Health and Human Services.

-3-

1 on the first page and is part of the caption.

2     Gordian was under audit by the Service's Large Business and International Division for the tax year ending March 31, 2011 at the time the petition was filed.  At some point between February 24, 2012 and March 16, 2012, Gordian's bankruptcy case came to the attention of Ms. Lynne C. Weinberg-Davis of the Service's Small Business/Self-Employed Operating Division, Collections Unit, Insolvency Territory 8, Insolvency Group 6.  She signed the Service's original proof of claim on March 16, 2012, and it was filed on March 19, 2012.  The original proof of claim asserted a right to payment in the amount of $1,970,918.63 for estimated liabilities with respect to the Gordian tax years ending March 31, 2011 (pending examination) and March 31, 2012 (not yet filed).  Ironically, this proof of claim specifically lists "American Medical Technologies" as an aka (i.e., also known as) of Gordian.

    On May 30, 2012, the Court entered an order establishing an August 22, 2012 bar date for government claims, including taxing authority claims.  There is no dispute that the Service received timely notice of the bar date and the bar date order.

    The Service amended the original proof of claim on July 19, 2012.  Apparently the Service's audit of Gordian's return for the tax year ending March 21, 2011 had resulted in a so-called "no change" letter, because the amended proof of claim dropped any claim with respect to this tax year and asserted only an estimated claim ("Unasssessed Liability") for the tax year ending March 31, 2012 in the amount of $1,395,804.63.  Like the original proof of claim, the amended proof of claim is signed by Ms. Weinberg-Davis and lists "American Medical Technologies" as an aka of Gordian.

    Despite the fact that Gordian and AMT were both under audit in early 2012 (albeit by different divisions) and despite the prominent display of the "American Medical Technologies" dba in the petition and all the Gordian-filed pleadings, and despite the listing of "American Medical Technologies" in the Service's own original and amended proofs of claim in the Gordian case, the Service apparently did not link up these two entities until October 22, 2012 when Special Assistant United States Attorney David J. Warner called Ms. Weinberg-Davis to discuss the case.  Immediately prior to this call, Ms. Weinberg-Davis did not know that there

was any connection between Gordian (with whom she was dealing) and AMT (with whom Mr. Fein was dealing).

The way the connection occurred was as follows. Mr. Fein issued a summons to Mr. Del Signore to appear for an interview on October 23, 2012 in his capacity as AMT's president. Mr. Warner, in preparation for this interview, ran a PACER search on October 22, 2012 for any filings related to AMT by using the search term "American Medical Technologies." This search led him to the Gordian chapter 11 case, where he for the first time discovered the original and amended proofs of claim the Service had filed and learned the name of a Service employee he could call to obtain more information about Gordian, namely, Ms. Weinberg-Davis.

Following its connection of Gordian and AMT, the Service filed its second amended claim — Claim 53 — on December 6, 2012 seeking a recovery of $14,817,212.90 in priority corporate income taxes and interest and $2,969,776.50 in general unsecured tax penalties, for a total of $17,786,989.40, all on account of alleged transferee liability from AMT calendar tax years 2005 through 2011. Claim 53 withdrew the Service's claim for unassessed liability of $1,395,804.63 for the tax year ending March 31, 2012 that had been asserted in the Service's (first) amended proof of claim and substituted claims for transferee or successor liability for taxes allegedly owed by AMT with respect to tax years 2005 through 2011, aggregating $17,786,989.40.

Eight days later, on December 14, 2012, Gordian filed the Gordian Objection and calendared the matter for hearing on January 14, 2013. The United States of America filed its opposition to the Gordian Objection on December 21, 2012. On January 4, 2013, the parties filed a stipulation to continue the hearing on the Gordian Objection to March 11, 2013, which the Court approved by order entered January 9, 2013.

The USA Motion was filed on February 5, 2013 and was calendared for hearing on March 11, 2013.

Although the Court stood ready to decide these matters at the originally-scheduled January 14 and March 11 hearings, there followed a long series of stipulations between

-5-

Gordian and the United States of America continuing the hearings. The parties first stipulated to a continuance to May 13, 2013, and then to June 3, 2013. At the June 3 hearing, the Court continued the hearing to August 21, 2013 at the request of Gordian and the United States of America. The parties then stipulated on August 14, 2013 to continue the August 21 hearing to September 25, 2013, when the hearing finally went forward on the merits.

The stipulations continuing the hearings recite that Gordian was discussing a global settlement of disputes with the United States of America on behalf of CMS, that counsel for CMS had suggested that Gordian include Claim 53 in the discussions of a global settlement and, further, that counsel for Gordian and the Service "agree that this is a logical course of action."[6]

## CONCLUSIONS OF LAW

This matter is before the Court pursuant to 28 U.S.C. § 157, Federal Rules of Bankruptcy Procedure 3007 and 9006(b)(2) and Local Bankruptcy Rules 3007-1 and 9013-1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Because the allowance of claims in a bankruptcy case was a matter relegated by English law in 1789 to bankruptcy commissioners (the 18th century equivalent of today's federal bankruptcy judges) and not to the common law courts or the courts of equity (except perhaps upon appeal), this Court may issue a final order in the matter under *Stern v. Marshall* __ U.S. __, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011).  2 William Blackstone, Commentaries *480-81, *487.

### The Gordian Objection

Bankruptcy Code section 521(1) requires a debtor to file a schedule of claims. If a creditor's claim is not scheduled or is scheduled as disputed, contingent or unliquidated, Federal Rule of Bankruptcy Procedure 3003(c)(2) requires a creditor who wishes to be paid from the bankruptcy estate to file a proof of claim before the bar date. If the creditor fails to do

---

[6] Stipulation re Continuance of Hearing on Objection to Claim 53 filed by the Department of the Treasury—Internal Revenue Service (Docket # 468), Jan. 4, 2013 at page 2, lines 14-15.

so, the creditor "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution" subject to certain exceptions not applicable here.  Fed. R. Bankr. P. 3003(c)(2).

There is no dispute that Gordian did not schedule the Service's claim asserted in Claim 53 nor that the Service failed to file Claim 53 prior to the bar date.  That is not the end of the matter, however, because Federal Rule of Bankruptcy Procedure 9006(b)(1) permits a bankruptcy court to enlarge the time to file a proof of claim "where the failure to act was the result of excusable neglect."  The United States of America, invoking Rule 9006(b)(1), asks the Court to overrule the Gordian Objection on the ground that the Service's failure to observe the bar date was the result of excusable neglect.

In *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court of the United States established a four-part balancing test for determining whether excusable neglect exists under Federal Rule of Bankruptcy Procedure 9006(b). *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004).  These factors are:  (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the claimant's conduct was in good faith.  *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1003 (9th Cir. 2006); *Forward Progress Mgmt. Real Estate, Inc. v. The Yucca Group, LLC (In re The Yucca Group LLC)*, 2012 WL 2086485 (B.A.P. 9th Cir., June 8, 2012).

The determination is essentially an equitable one, taking account of all relevant circumstances surrounding a party's omission.  No single circumstance in isolation compels a particular result regardless of the other factors.  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 n. 2 (9th Cir. 1997).

Gordian conceded at oral argument that the United States of America acted in good faith.  Consequently, the fourth element of the *Pioneer* balancing test is not in issue.

Regarding the third element — the Service's reason for the delay, and whether it was within the Service's reasonable control — Gordian contends that the Service was remiss in

conducting due diligence and that it could easily have discovered the link between AMT and Gordian.

The Court agrees with Gordian's analysis of the third element of the *Pioneer* test. Both Gordian and AMT were under audit by the Service at the very same time that this case commenced. Despite the fact that "American Medical Technologies" is listed as a Gordian dba on the petition's first page and is actually part of the caption of this case and appears on every filed pleading and despite the fact that the Service's own proofs of claim show American Medical Technologies as an aka of Gordian, the Service apparently never paused to consider whether there was a relationship between Gordian and AMT until after the bar date had passed. As Gordian aptly argues, "[h]ad the IRS had the internal systems in place to adequately investigate the Debtor, it would have clearly seen the relationship between American Medical Technologies and the Debtor. Instead, however, the IRS had two different agents in different sections working on the case, neither of whom knew what the other was doing. This lack of communication . . . reflects the disorganization and inefficiency of the IRS which causes the kind of mistakes made in this case."[7] The Court concludes that the cause for the delay was within the complete control of the Service.

The two remaining elements of the *Pioneer* test are danger of prejudice to the debtor and potential impact on judicial proceedings (and length of the delay in the claim's filing).[8] These elements require the Court to identify and analyze the adverse consequences of Claim 53's late filing.

When a proof of claim is timely filed, it puts the debtor and other parties in interest in a bankruptcy case on notice that a particular creditor is asserting a right to payment. When a proof of claim is filed after the bar date, this notice is delayed by the length of time running from the bar date to the date of the untimely claim's filing. During this interval, the debtor and other parties in interest may have taken action in reliance on their knowledge of the body of

---

[7] Debtor's Opposition to the Motion of the United States For Leave to File Amended Proof of Claim (Docket # 700) at page 6, lines 19-24, filed September 11, 2013.
[8] The consideration of <u>danger</u> of prejudice to the debtor and <u>potential</u> impact on judicial proceedings is a forward-looking test. However, the Court does not take this to imply that the Court is precluded from examining and taking into account <u>actual prejudice</u> to Gordian and <u>actual impact</u> on judicial proceedings that may have occurred prior or subsequent to the filing of Claim 53 on December 6, 2012.

claims in the case as of the close of the bar date. For example, armed with information about the total amount of filed claims, a debtor may have reached certain tentative conclusions about how much it could afford to pay under a chapter 11 plan and, on that basis, conducted negotiations with the unsecured creditors committee and perhaps secured creditors as well. Equally true, the debtor may have conveyed information to the bankruptcy court during status conferences about the anticipated timing for the filing of a disclosure statement and plan of reorganization, and the bankruptcy court may have taken such information into account in setting various deadlines in the case.

The filing of a late claim has the potential to upend such negotiations and any informal agreements that may have been reached with creditors as well as to require the bankruptcy court to reconsider its previously imposed deadlines. Each case turns on its own facts, and there may be other instances of prejudice to the debtor and an adverse impact on judicial proceedings beyond those mentioned above.

Consequently, the Court must consider whether the delay in notice that occurred by reason of the filing of Claim 53 on December 6, 2012 rather than on August 22, 2012 created prejudice to Gordian or any impact on judicial proceedings. The Court must scrutinize what occurred between August 22, 2012 and December 6, 2012 with an alert eye to <u>events occurring in this interval</u> that may have created prejudice to Gordian and an impact on judicial proceedings in this case.

That is not the end of it, however. Prejudice to the debtor may occur <u>after</u> the untimely claim is filed, and judicial proceedings occurring <u>after</u> the filing may be impacted. When a proof of claim is untimely filed, a debtor has the option to either accept it as filed or to contest it via a claim objection on grounds of untimely filing. If the debtor decides to object, there will necessarily be an interval of time between the filing of the claim and the bankruptcy court's determination of the objection. Prejudice to the debtor may occur during this interval and there may be an impact on judicial proceedings as well. Accordingly, the Court must also evaluate whether prejudice to Gordian occurred after December 6, 2012 by reason of the untimely filing of Claim 53 and whether judicial proceedings after December 6, 2012 were

1  adversely impacted.

2  Focusing first on the interval of time between the August 22, 2012 bar date and the
3  December 6, 2012 filing date of Claim 53, the Court finds no prejudice to Gordian or any
4  impact on judicial proceedings arising because Claim 53 was filed on December 6, 2012
5  instead of August 22, 2012.  Gordian argues that creditors' expectations were disappointed or
6  changed by the filing of Claim 53, but it presents no evidence on this point or, for that matter,
7  on the more significant point of how a change in creditors' expectations prejudiced Gordian.
8  It simply asks the Court to assume that creditors were disappointed and that prejudice to
9  Gordian arose thereby.  Regarding impact on judicial proceedings, Gordian makes no
10 showing that the activity in the case between August 22, 2012 and December 6, 2012
11 appearing on the Court's docket was affected by the lateness in the filing of Claim 53.  In this
12 period there were hearings on interim fee applications, an extension of exclusivity, the filing of
13 an adversary complaint by Gordian against the State of Florida, a status conference, an
14 assumption of unexpired leases on nonresidential real property, and a partial disallowance of
15 a claim of the California State Board of Equalization.  It is not apparent to the Court how any
16 of this was affected by the Service's late filing.

17 Gordian argues that its negotiations with CMS were significantly complicated by the
18 need to reach a global settlement with the Service.  This alleged complication probably arose
19 about the time Claim 53 was filed or perhaps five or six weeks earlier (it being extremely
20 unlikely that CMS knew about the Service's claim before the Service did).  If the Service had
21 timely filed Claim 53, Gordian would have had a few more months to negotiate with CMS and
22 the Service to reach a global settlement.  However, in light of the fact that CMS and Gordian
23 have been unable to reach agreement despite over a year of negotiation, the Court doubts
24 that a few more months of negotiating time would have made a difference, and in any event
25 Gordian presents no evidence on the point.

26 If there was no prejudice to Gordian or adverse impact on judicial proceedings on or
27 before December 6, 2012, was there prejudice or adverse impact after that date?  Gordian
28 filed its plan of reorganization on August 23, 2013 and calendared a confirmation hearing for

October 21, 2013. The plan proposes to unimpair all creditor classes. The plan's feasibility clearly hinges on the assumption that Claim 53 will be disallowed in its entirety and that most, if not all, of the CMS claim will be disallowed.[9] Gordian argues that if the Court were to overrule Gordian's objection on untimely filing grounds to Claim 53, its ability to confirm the plan would be materially and negatively impacted by Claim 53.[10]

Further, parties have indicated at status conferences that Gordian's cash position is tenuous and that it may not be able to remain in business unless a plan can be confirmed in relatively short order.

Gordian's arguments concerning prejudice and impact on judicial proceedings must be evaluated in the context of a long string of continuances from the initial January 14, 2013 hearing date on its objection to Claim 53. Gordian's objection to Claim 53 could have been determined by the Court in January 2013, but Gordian voluntarily elected to join in stipulations continuing the hearing again and again until more than eight months had passed. To the extent that prejudice to a debtor is attributable or related to a delay in the resolution of an untimely filed claim, a debtor who is a willing party to such delay and a participant in it should be precluded from raising such prejudice as a ground for disallowance. The same holds true with respect to the issue of impact on judicial proceedings.

Gordian asserts that it needed to continue the hearings because the United States wanted to resolve both claims together. Indeed, there is some indication that the United States is unwilling to settle the CMS claim without also settling Claim 53. Be that as it may, Gordian was not under any compulsion to accede to the United States' preferences. The hearing on January 14, 2013 could have gone forward if Gordian had so elected. Gordian made a strategic decision to accede to the United States's request and join in the stipulations to continue. It had the right to do so, but it cannot have its cake and eat it too by agreeing to a delay and then complaining that it was prejudiced by the very same delay.

---

[9] Motion for Entry of Order Confirming Debtor's Plan of Reorganization [Dated August 23, 2013] and Memorandum of Points and Authorities (Docket # 718), filed September 27, 2013, at pages 1-2 (cash projected to be on hand on effective date alleged to be sufficient provided Gordian succeeds in disallowing Claim 53 in its entirety and most or all of CMS claim).

[10] It may be asked whether Gordian's ability to confirm the plan is materially and negatively impacted by the $76 million-plus CMS claim no matter what happens to Claim 53, but Gordian contends the CMS claim will be either disallowed outright or estimated by the Court prior to confirmation. *Id.* at page 2, lines 9-11.

It may be objected that Gordian is being penalized by the Court for negotiating with the United States, and that it is unwise to adopt a rule or interpretation of the law that discourages and penalizes negotiation. This is specious reasoning, however, because to allow Gordian to rely on prejudice accruing after January 14, 2013 would be to penalize the United States for negotiating. Either way someone is being penalized.

What, then, was the prejudice to Gordian and the impact on judicial proceedings as of January 14, 2013? The Court finds none, and Gordian has made no showing of any.

To summarize, one of the four *Pioneer* factors favors Gordian, and the remaining three factors favor the United States. The Court will not apply a numerical analysis here (i.e., three prevails over one), but instead will apply the equitable balancing required by *Pioneer* and its progeny. The Service blundered in this case, but the blunder was in good faith and did not prejudice Gordian or detrimentally affect judicial proceedings after adjusting for consensual delay as discussed above. In this sense, with the exception of the consensual delay matter, it is very much like *Pioneer* itself, where the delay in filing was found to be within the claimant's control, but the other three factors favored the claimant. Following *Pioneer*'s result as well as its reasoning, the Court determines that the United States's failure to timely file Claim 53 was the result of excusable neglect and therefore overrules Gordian's objection and denies the Gordian Objection with prejudice.[11]

The Court's tentative ruling on the Gordian Objection discussed the issue of whether Claim 53 asserted claims of the same generic origin as claims asserted in earlier, timely filed proofs of claim and therefore could be filed after the bar date without regard to excusable neglect analysis. *Cf. Menick v. Hoffman,* 205 F.2d 365 (9th Cir. 1953). In view of the Court's determination of the Gordian Objection based on excusable neglect grounds, there is no need for the Court to reach the issue of whether the transferee liability claim alleged in Claim 53 is of the same generic origin as the Service's claims for federal corporate income tax of Gordian asserted in the timely filed original proof of claim and the timely filed first amended proof of claim.

//

---

[11] To clarify, this is without prejudice to Gordian's right to object to Claim 53 on its tax merits.

<u>The USA Motion</u>

The USA Motion seeks leave of the Court to amend Claim 53 to allegedly clarify that the Service is asserting a secured claim based upon a right of setoff against payments that are determined to be due and owing by CMS to Gordian.

Claim 53 states that "[t]he United States has a right of setoff or counterclaim(s) in the amount of $2,226,557.00 . . . All right of setoff are preserved and will be asserted to the extent lawful."  Presumably, the Service seeks to negate any implication in Claim 53 that the setoff is limited in amount to $2,226,557 and to identify CMS as the potential source of the payments to Gordian.

Both the Service and Gordian used the USA Motion as a vehicle to argue the underlying merits (or lack of merits) of Gordian's objection to Claim 53; very little in either the USA Motion or Gordian's opposition addresses whether an amendment of Claim 53 for the purpose described above is proper.

The Service cites no authority relating to claim amendments for the purpose of clarifying a previously-filed proof of claim or tightening up the language in it.  The Service has not met its burden of going forward, and therefore the Court will deny the USA Motion without prejudice.

IT IS SO ORDERED.

###

Date: October 16, 2013

Mark S. Wallace
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **MEMORANDUM DECISION AND ORDER** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of October 16, 2013, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- M Douglas Flahaut    flahaut.douglas@arentfox.com
- Marshall F Goldberg    mgoldberg@glassgoldberg.com
- Michael I Gottfried    mgottfried@lgbfirm.com, ncereseto@lgbfirm.com;rmartin-patterson@lgbfirm.com;kalandy@lgbfirm.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Jeffrey L Kandel    jkandel@pszjlaw.com
- Teddy M Kapur    tkapur@pszjlaw.com
- Joseph W Kots    jkots@state.pa.us
- Rodger M Landau    rlandau@lgbfirm.com, marizaga@lgbfirm.com;rmartin-patterson@lgbfirm.com;vedwards@lgbfirm.com;kalandy@lgbfirm.com
- Rodger M Landau    rlandau@lgbfirm.com, marizaga@lgbfirm.com;rmartin-patterson@lgbfirm.com;vedwards@lgbfirm.com;kalandy@lgbfirm.com
- Mary D Lane    mal@msk.com, mec@msk.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Michael K Murray    mkmurray@lanak-hanna.com
- Misty A Perry Isaacson    misty@pagterandmiller.com
- Daniel H Reiss    dhr@lnbyb.com
- Deirdre B Ruckman    druckman@gardere.com, druckman@gardere.com
- Seth B Shapiro    seth.shapiro@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jeanne C Wanlass    jwanlass@loeb.com, karnote@loeb.com;ladocket@loeb.com
- David J Warner    David.J.Warner@irscounsel.treas.gov
- Elizabeth Weller    dallas.bankruptcy@publicans.com
- Brian D Wesley    brian.wesley@doj.ca.gov
- Rebecca J Winthrop    rebecca.winthrop@nortonrosefulbright.com, rhonda.cole@nortonrosefulbright.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

*Debtor*
**Gordian Medical, Inc.**
17575 Cartwright Road
Irvine, CA 92614

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

Frederick Robinson
**Fulbright & Jaworski LLP**
801 Pennsylvania Avenue, NW
Washington, DC 20004-2623

☐ Service information continued on attached page