Samuel R. Maizel (CA Bar No. 189301)
Malhar S. Pagay (CA Bar No. 189289)
Jeffrey L. Kandel (CA Bar No. 115832)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: smaizel@pszjlaw.com
        mpagay@pszjlaw.com
        jkandel@pszjlaw.com

Attorneys for Gordian Medical, Inc., d/b/a American
Medical Technologies, Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>GORDIAN MEDICAL, INC., dba American Medical Technologies,<br><br><div align=center>Debtor.</div> | Case No.:  8:12-bk-12339 MW<br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF DEBTOR FOR ORDER APPROVING SETTLEMENT BETWEEN THE DEBTOR AND THE UNITED STATES OF AMERICA, ACTING THROUGH THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES AND THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; MEMORANDUM OF POINTS AND AUTHORITIES;  DECLARATION OF GERALD DEL SIGNORE IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date:        March 4, 2015<br>Time:        2:00 p.m.<br>Place:        U.S. Bankruptcy Court<br>                411 Fourth Street<br>                Courtroom 6C<br>                Santa, Ana, CA  92701-4593<br><br>Judge:        Hon. Mark Wallace |

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE; COUNSEL FOR THE CENTERS FOR UNITED STATES MEDICARE AND MEDICAID SERVICES; COUNSEL FOR THE UNITED STATES INTERNAL REVENUE SERVICE; COUNSEL FOR THE CALIFORNIA FRANCHISE TAX BOARD; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES REQUESTING SPECIAL NOTICE:**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that Gordian Medical, Inc., dba American Medical Technologies, the debtor and debtor in possession (the "Debtor") in the above captioned chapter 11 case (the "Case") hereby moves (the "Motion") the Court for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019(a) ("Rule 9019(a)") approving the settlement between the Debtor and the United States of America, acting through the United States Department of Justice ("DOJ") and on behalf of the Centers for Medicare and Medicaid Services of the Department of Health and Human Services ("CMS"), of claim nos. 51 and 52 (the "CMS Claims"). The terms of the settlement ("Settlement") will be specifically set forth in the settlement agreement (the "Settlement Agreement") between the Debtor and CMS, the final terms of which are still being resolved between the Debtor, DOJ and CMS, and a copy of which will be filed with the Court and served on interested parties no later than two days prior to the hearing on this Motion.  However, the final Settlement Agreement is expected by the Debtor to be consistent with the terms in the document attached hereto as **Exhibit 1.**  The salient terms of the Settlement provide for an allowed CMS claim of $35 million (the "Settlement Amount") with the following provisions: (a) the Debtor shall pay $5 million to CMS at confirmation, (b) CMS shall be allowed to recoup approximately $4.6 million it currently holds in Medicare Trust Fund accounts, and (c) the balance of the Settlement Amount in the amount of $25.4 million shall be paid by the Debtor in equal monthly installments by CMS recouping approximately $305,066 from monies otherwise owed to the Debtor over the eighty-four months,[1] commencing with the first full month after the Effective Date of the Plan.  This will fully resolve the CMS Claims, which allegedly total approximately $76 million.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Bankruptcy Rule 9013-1, the Memorandum of Points and Authorities and Declaration of Gerald Del Signore in support of the Motion, and all pleadings, documents and records on file with this Court, as well as any other documentary evidence as may be presented to this Court.

---

[1] There are provisions in the Settlement Agreement which provide for payments to CMS from ongoing appeals of previously denied claims submitted by the Debtor.  Those payments will not reduce the monthly amount, but may reduce the number of monthly payments required under the Settlement Agreement.

DOCS_LA:280210.3 03717/002

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(o) requires that any objection or response to the Motion be filed with the Bankruptcy Court and served upon undersigned counsel for the Debtor at least fourteen (14) days prior to the hearing date, provided, however, that counsel for CMS will be given until two days prior to the hearing on the Motion to file and serve any objection or response to the Motion.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in the Motion and the relief sought in this Motion may be granted without further notice.  Pursuant to agreement between counsel for CMS and counsel for the Debtor, the hearing on this Motion will be continued if (a) the Debtor, DOJ and CMS cannot agree on the final text of the Settlement Agreement by March 2, 2015, or (b) final approval of the Settlement Agreement, if any, by the necessary officials on behalf of DOJ and CMS is not obtained by March 2, 2015.

**WHEREFORE** the Debtor respectfully requests that this Court enter an order  (i) granting the Motion, (ii) approving the Settlement with the CMS, (iii) authorizing the Debtor to enter into and take any and all actions reasonably necessary to effectuate the Settlement, (iv) providing that the CMS Claims shall be satisfied as set forth in the Settlement Agreement; and (vi) granting such other and further relief as the Bankruptcy Court deems just and proper.

Dated:    February 11, 2015                PACHULSKI STANG ZIEHL & JONES LLP


                                           By    */s/ Samuel R. Maizel*
                                                  Samuel R. Maizel


                                                  Attorneys for Gordian Medical, Inc., dba
                                                  American Medical Technologies, Debtor and
                                                  Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

By this Motion, the Debtor seeks approval of the Settlement that will reduce the CMS Claims of approximately $76 million to $35 million. Through the Settlement, the Debtor avoids the risk, expense and delay of further complicated litigation with CMS and will facilitate the final resolution of this Case in an expeditious manner.

### II.

### JURISDICTION AND VENUE

On February 24, 2012, the Debtor, filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this matter is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.

### STATEMENT OF FACTS

**A.**     **General Case Background**

On February 24, 2012, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

The Court entered an order setting August 22, 2012 as the deadline by which all governmental units must file prepetition claims against the Debtor. On December 6, 2012, the United States Internal Revenue Service (the "IRS") filed a claim in the amount of $17,786,989.40, of which $14,817,212.90 was listed as priority and $2,969,776.50 as general unsecured (the "IRS Claim") for alleged unpaid federal corporate income taxes of American Medical Technologies, Inc. ("AMT"), a non-debtor entity, based upon a theory of successor liability. The Debtor objected to the IRS Claim as being late filed but the Court ultimately held that the IRS Claim could be late filed due to excusable neglect. While the Court allowed the IRS Claim to be filed late, it did not rule on the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

merits of the IRS Claim, and the Debtor has reserved all rights to object to the merits of the IRS Claim. The Debtor and the IRS have now agreed to the terms of a settlement, but final language of the settlement agreement is still being resolved.

The Debtor filed its original Plan of Reorganization [Dated August 23, 2013] (the "Plan") [Docket No. 685] on August 23, 2013. The hearing on confirmation of the Plan was continued numerous times in order to facilitate a resolution of the disputes between the Debtor and the various government entities, including the IRS, CMS and the California State Franchise Tax Board ("FTB"). The Court entered a *Scheduling Order* [Docket No. 893], vacating the plan confirmation hearing date, due to the uncertainties concerning the settlements between the Debtor and the IRS, CMS and the FTB. The Debtor has now filed its *First Amended Plan of Reorganization [Dated January 13, 2015]* (the "Amended Plan") [Docket No. 1395] which is set for a confirmation hearing on March 4, 2015, provided that the Debtor can resolve the remaining issues with CMS and obtain final approval of all three settlements.

The Debtor has negotiated, generally, a settlement with the FTB and IRS, but the Settlement remains subject to DOJ and CMS final approval. The delay in reaching a settlement of the IRS claim caused additional CMS-related issues to arise which needed to be resolved before the DOJ and CMS can further consider final approval of the Settlement. The Debtor believes all but one issue is resolved. The Debtor, DOJ and CMS continue to negotiate in good faith and hope to resolve the remaining issue soon so that the DOJ may finally approve the Settlement before the scheduled confirmation hearing.

The FTB filed numerous claims against the Debtor which were either withdrawn or amended. The still-extant FTB amended claim was based, in large part, upon the Court's ruling relating to late filed IRS claim. The Debtor has reached a settlement in principle with the FTB, but the FTB has made its settlement contingent upon final approval of the IRS settlement, which is contingent upon final approval of the Settlement. Thus, until the remaining issue is resolved with CMS, the FTB settlement cannot be approved by the appropriate state officials.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.    The CMS Claims**

The CMS Claims are two identical claims asserting a prepetition right to payment of no less than $76 million, based upon alleged "Medicare Overpayments" for payments made to the Debtor for wound care products and overpayments as identified by the Program Safeguard Contractors and Zone Program Integrity Contractors (organizations to conduct program integrity functions for the Medicare program) in their reviews of the Debtor's invoices.  Additionally, CMS asserts an administrative claim for postpetition overpayments in an unliquidated amount.  The Debtor objected to the CMS Claims (the "CMS Objection") but the hearings on the CMS Objection have been continued numerous time while the parties negotiated.

**IV.**

**THE CMS SETTLEMENT**

After almost two years of negotiations, the Debtor and CMS ultimately reached agreement on most issues as reflected in **Exhibit 1** attached hereto and summarized herein**.**   The final terms of the Settlement Agreement are still to be resolved and it will be filed with the Court no later than two days prior to the hearing on this Motion.   The remaining issues are related to the treatment of postpetition CMS claims vis-à-vis the impact of confirmation and the discharge on those claims. The Debtor anticipates resolving those issues shortly with CMS and DOJ.

The salient terms of the Settlement are as follows:

(a)    the CMS Claims shall be allowed in the amount of $35 million;

(b)    the Debtor pays $5 million at confirmation;

(c)    CMS shall be allowed to recoup approximately $4.6 million it currently holds in the Medicare Trust Fund;

(d)    the balance of the Settlement Amount in the amount of approximately $25.4 million shall be recouped by CMS in equal monthly offsets in the ordinary course of business of approximately $305,066 over the eighty-four months; and

(e)    the Debtor has agreed to stop billing for certain products, and has agreed to resolve certain pending appeals within the Medicare appeals process.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# V.

## THE COURT SHOULD APPROVE THE PROPOSED
## SETTLEMENT PURSUANT TO RULE 9019(a)

### A.    The Standard of Review

"The law favors compromise and not litigation for its own sake. . . ."  *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *see also Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993) (noting that compromises are favored in bankruptcy).  Rule 9019(a) of the Bankruptcy Rules ("Rule 9019(a)") provides in relevant part that "[o]n motion by the trustee and after notice and hearing, the court may approve a compromise or settlement." Rule 9019(a) commits the approval or denial of a settlement to the sound discretion of the Court.  *See In re Stein,* 236 B.R. 34, 37 (D. Or. 1999).  The Court, however, should not substitute its own judgment for the judgment of a debtor.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

When deciding whether to approve a settlement, the Court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate.  *See A & C Props.*, 784 F.2d at 1381.  The Court is neither required to conduct a mini-trial on the merits of the settlement, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976), nor determine that the settlement amount is the amount that would have been paid had the matter been tried.  The Court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)); In re *Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).

The Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968), that in order to approve a proposed settlement under the then-extant Bankruptcy Act, a court must have found that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of

the wisdom of the proposed compromise."  The Ninth Circuit Court of Appeals has reiterated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises (collectively, the "Woodson Factors").  *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380).  It is not necessary that the conclusions reached in the consideration of each of the Woodson Factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement.  *See Pacific Gas*, 304 B.R. at 417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

## A.    The Settlement Satisfies the Rule 9019 Standard

As discussed below, the conclusions that must be drawn from a reasoned consideration of the Woodson Factors support Court approval of the CMS Settlement.

### 1.    Probability of Success

The Debtor has evaluated the probability of success, the merits of any litigation that might result if the disputes are not settled, and the risks and costs inherent with litigation.  Success in any such litigation certainly is not assured and there is a substantial risk that CMS would be allowed substantial claims in the Case.  CMS would be expected to raise issues such as whether the Debtor is required to exhaust Medicare's administrative remedies (which will add years to the litigation if required).  Additionally, litigation regarding the CMS Claims would be complex and, therefore, expensive and time-consuming, including extensive discovery, and would likely involve expert witness testimony.  The proposed Settlement substantially reduces the amount that would be paid on CMS Claim if it were allowed in full, provides that a significant amount of the Settlement will be satisfied through offsets of funds that are presently held by CMS in the Medicare Trust Fund, and provides that a significant amount of the Settlement Amount will be paid over seven years with a reasonable rate of interest.

DOCS_LA:280210.3 03717/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 2.    Difficulties With Collection

The Debtor does not believe that collection of a judgment is an issue because the primary issues involve litigation of the CMS Claim <u>against</u> the Debtor.  However, collection of the approximately $4.6 million currently owed to the Debtor by CMS but held in the Medicare Trust Fund might be quite difficult.   The IRS and CMS would certainly assert a right for CMS to setoff those funds against the still unresolved claims of the IRS.  Courts have frequently held that the United States is one party for mutuality purposes under section 553 of the Bankruptcy Code, and that federal agencies can therefore setoff claims held by different agencies.  *See, e.g., In re HAL, Inc.,* 122 F.3d 851 (9th Cir. 1997), *aff'g*, 196 B.R. 159 (B.A.P. 9th Cir. 1996) ("[F]ederal government agencies, with the exception of those acting in a distinctly private capacity, are a single entity for purposes of setoff under § 553."); *In re Chateaugay Corp.,* 94 F.3d 772, 779 (2d Cir. 1996) (holding that there is a common law right to offset tax refunds against claims of other federal agencies); *In re Turner*, 84 F.3d 1294 (10th Cir. 1996) *(en banc)*, vacating panel decision at 59 F.3d 1041 (10th Cir. 1995) ("We are convinced that the presence or absence of a bankruptcy proceeding does not affect the United States' status as a unitary creditor.").  Even if the Debtor were to prevail on the CMS Claim Objection, it would still have to address the likely CMS effort to set off the amounts owed by it to the Debtor against the IRS Claim, and on this issue a judgment against CMS would definitely be appealed, thereby delaying the conclusion of this case.

### 3.    Complexity of the Litigation

The issues surrounding the bases of the CMS Claims involve, among other things, the determination of many complicated Medicare Act issues, including jurisdiction and regulatory issues.  The analysis and resolution of these complex issues will require extensive discovery and would likely require the involvement of regulatory counsel specifically knowledgeable in these specialized areas of law.  As such, the Settlement will avoid the further disruption, expense, risk, delay and uncertainty associated with litigating such complex issues.

### 4.    Interests of Creditors

As set forth above, further litigation with CMS could be costly to the Debtor with no

DOCS_LA:280210.3 03717/002

certainty of a successful result.  In contrast, the Settlement resolves the disputes between the Debtor and CMS at a significant discount from CMS's substantial claim against the Debtor.

Moreover, in addition to the Settlement with the CMS, the Debtor has also entered into settlements with the IRS and the FTB (collectively referred to as the "Governmental Agencies") who hold claims of more than $20 million against the Debtor, including significant alleged priority claims.  The Governmental Agencies insist that no settlement with them will be possible, unless and until there is also a settlement with CMS.  Thus, concluding the Debtor's bankruptcy case, which has now lasted for almost three years, requires that the Settlement be approved.

Additionally, cash payment of the amount owed at confirmation of the Settlement Amount to the CMS is being funded by Mr. Gerald Del Signore, the principal of the Debtor, as part of the "new value" contribution toward confirmation of the First Amended Plan.  The balance of the Settlement is achieved through offset of approximately $4.6 million that are presently held by CMS in the Medicare Trust Fund accounts.  If the Settlement is not approved, Mr. Del Signore may well withdraw his new value contribution and there will be nothing left to pay the obligations of the Debtor required at confirmation.  As such, when considered in light of the risk associated with litigation, and the certain delay and expense of litigation, the Debtor believes the Settlement is in the best interests of the estate.  Moreover, once the Settlement is approved, the Debtor can proceed with confirmation and to resolve the Case.

Based upon the foregoing, the Debtor submits that the Settlement satisfies the four-part test for approval of the Settlement, and is in the best interest of its creditors and should be approved by this Court.

**B.**    **Adequate Notice of the Motion Has Been Given**

Debtor has given notice of the Settlement to all creditors of the estate entitled to notice by Bankruptcy Rule 2002(a)(3) and to all parties requesting electronic notice.  Creditors have been informed that (a) pursuant to Local Bankruptcy Rule 9013-1(o) any objection or response to the Motion be filed with the Bankruptcy Court and served upon undersigned counsel for the Debtor at least fourteen (14) days prior to the hearing date, provided, however, that counsel for CMS has until two days prior to the hearing on this Motion to file and serve any objection or response to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

Motion, and (b) pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in the Motion and the relief sought in this Motion may be granted without further notice.

Pursuant to agreements between counsel for CMS and counsel for the Debtor, the hearing on this Motion will be continued if (a) the Parties cannot agree on the final text of the Settlement Agreement by two days before the hearing on this Motion, or (b) final approval of the Settlement Agreement, by the necessary officials on behalf of CMS and DOJ, are not obtained by two days before the hearing on this Motion.

## VI.

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests entry of an order (i) granting the Motion; (ii) approving the Settlement with CMS, (iii) authorizing the Debtor to enter into and take any and all actions reasonably necessary to effectuate the Settlement, (iv) providing that the CMS Claims be satisfied as set forth in the Settlement Agreement, and (v) granting such other and further relief as the Bankruptcy Court deems just and proper.

Dated:    February 11, 2015          PACHULSKI STANG ZIEHL & JONES LLP


                                     By      _/s/ Samuel R. Maizel_
                                             Samuel R. Maizel
                                             Attorneys for Gordian Medical, Inc., dba
                                             American Medical Technologies, Debtor and
                                             Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

## DECLARATION OF GERALD DEL SIGNORE

I, Gerald Del Signore, declare as follows:

1.      I am the President and sole member of the Board of Directors of Gordian Medical, Inc., dba American Medical Technologies, the above-captioned debtor and debtor in possession (the "Debtor").  I am primarily responsible for the management of the Debtor, and in this capacity, I am generally familiar with the day-to-day operations, business and financial affairs of the Debtor.

2.      Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (albeit my own or that gathered from others within the Debtor's organization), my review of relevant documents, or my opinion based upon my experience concerning the operations of the Debtor.  If called upon to testify, I would testify to the facts set forth in this Declaration.

3.      This Declaration is in support of the *Motion Of Debtor For Order Approving Settlement Between the Debtor and the United States of America, Acting Through the United States Department of Health and Human Services and the Centers for Medicare and Medicaid Services* (the "Motion").  Capitalized terms not otherwise defined in this Declaration have the meaning given them in the Motion.

4.      The Debtor has negotiated, generally, a settlement with the FTB and IRS, but the Settlement remains subject to DOJ and CMS final approval.   The delay in reaching a settlement of the IRS claim caused additional CMS-related issues to arise which needed to be resolved before the DOJ and CMS can further consider final approval of the Settlement.  The Debtor believes all but one issue is resolved.  The Debtor, DOJ and CMS continue to negotiate in good faith and hope to resolve the remaining issue soon so that the DOJ may finally approve the Settlement before the scheduled confirmation hearing.

5.      After almost two years of negotiations, the Debtor and CMS ultimately reached agreement on most issues as reflected in **Exhibit 1** attached to the Motion and summarized in the Motion**.**  The final terms of the Settlement Agreement are still to be resolved and it will be filed with the Court no later than two days prior to the hearing on this Motion.   The remaining issues are primarily related to the treatment of postpetition CMS claims vis-à-vis the impact of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

confirmation and the discharge on those claims.  The Debtor is working towards resolving those

issues shortly with CMS and DOJ.  The salient terms of the Settlement are as follows:

>    (a)    the CMS Claims shall be allowed in the amount of $35 million;

>    (b)    the Debtor pays $5 million at confirmation;

>    (c)    CMS shall be allowed to recoup approximately $4.6 million it currently holds in the Medicare Trust Fund accounts;

>    (d)    the balance of the Settlement Amount in the amount of approximately $25.4 million shall be recouped by CMS in equal monthly installments of approximately $305,066 over eighty-four months; and

>    (e)    the Debtor has agreed to stop billing for certain products, and has agreed to resolve certain pending appeals within the Medicare appeals process.

6.    I, on behalf of the Debtor, and in consultation with counsel for the Debtor, have

evaluated the probability of success, the merits of any litigation that might result if the disputes

with CMS are not settled, and the risks and costs inherent with litigation against CMS.  I have

concluded that success in any such litigation certainly is not assured and there is a substantial risk

that CMS would be allowed substantial claims in the Case.  I am informed by counsel and believe

that CMS would be expected to raise issues such as whether the Debtor is required to exhaust

Medicare's administrative remedies (which will add years to the litigation if required).

Additionally, I believe that litigation regarding the CMS Claims would be complex and, therefore,

expensive and time-consuming, including extensive discovery, and would likely involve expert

witness testimony.  The proposed Settlement substantially reduces the amount that would be paid

on CMS Claim if it were allowed in full, provides that a significant amount of the Settlement will

be satisfied through offsets of funds that are presently frozen by CMS, and provides that a

significant amount of the Settlement Amount will be paid over seven years with a reasonable rate

of interest.

7.    I, on behalf of the Debtor, do not believe that collection of a judgment is an issue

because the primary issues involve litigation of the CMS Claim against the Debtor.  However,

collection of the approximately $4.6 million currently owed to the Debtor by CMS but held in

suspense might be quite difficult.  I am informed and believe that the IRS and CMS would assert a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

right for CMS to set off those funds against the still unresolved claims of the IRS.

8.      Even if the Debtor were to prevail on the CMS Claim Objection, it would still have to address the likely CMS effort to set off the amounts owed by it to the Debtor against the IRS Claim, and on this issue a judgment against CMS would definitely be appealed, thereby delaying the conclusion of the Case.

9.      The issues surrounding the bases of the CMS Claims involve, among other things, the determination of many complicated Medicare Act issues, including jurisdiction and regulatory issues.  The analysis and resolution of these complex issues will require extensive discovery and would likely require the involvement of regulatory counsel specifically knowledgeable in these specialized areas of law.  As such, the Settlement will avoid the further disruption, expense, risk, delay and uncertainty associated with litigating such complex issues.

10.      As set forth above, further litigation with CMS could be costly to the Debtor with no certainty of a successful result.  In contrast, the Settlement resolves the disputes between the Debtor and CMS at a significant discount from CMS's substantial claim against the Debtor.

11.      Moreover, in addition to the Settlement with the CMS, the Debtor has also entered into settlements with the IRS and the FTB (collectively referred to as the "Governmental Agencies") who hold claims of more than $20 million against the Debtor, including significant alleged priority claims.  The Governmental Agencies insist that no settlement with them will be possible, unless and until there is also a settlement with CMS.  Thus, concluding the Debtor's bankruptcy case, which has now lasted for over three years, requires that the Settlement be approved.

12.      Additionally, cash payment of the amount owed at confirmation of the Settlement Amount to the CMS is being funded by me, the principal of the Debtor, as part of my "new value" contribution toward confirmation of the First Amended Plan.  The balance of the Settlement is achieved through offsets of approximately $4.6 million that are presently held by CMS in the Medicare Trust Fund account.  If the Settlement is not approved, I may well have to reconsider whether I should make a new value contribution; if I do not, the Debtor will not have sufficient funds to pay the Debtor's obligations owed at confirmation.  As such, when considered in light of

DOCS_LA:280210.3 03717/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the risk associated with litigation, and the certain delay and expense of litigation, the Debtor

believes the Settlement is in the best interests of the Debtor and its Estate.  Moreover, once the

Settlement is approved, the Debtor can proceed with confirmation and to resolve the Case.

13.    Based upon the foregoing, I, on behalf of the Debtor, submit that the Settlement is

in the best interest of the Debtor and its Estate and should be approved by this Court.

Executed this 11th day of February, 2015, in Irvine, California.

_____

Gerald Del Signore

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT 1

**CMS – Gordian Settlement Terms
[Dated January 12, 2015]**

1  SAMUEL R. MAIZEL (CA BAR NO. 189301)
   PACHULSKI STANG ZIEHL & JONES LLP
2  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA  90067
3  Telephone: 310/277-6910
   Facsimile: 310/201-0760
4  E-mail:  smaizel@pszjlaw.com

5  Attorneys for Gordian Medical, Inc., dba American
   Medical Technologies

6

7

8                UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                    SANTA ANA DIVISION

10

11 In re:                              Case No.:  08:12-bk-12339-MW

12 GORDIAN, MEDICAL, INC., d/b/a       Chapter 11
   AMERICAN MEDICAL TECHNOLOGIES
13                                     **STIPULATION OF SETTLEMENT
                      Debtor.          BETWEEN THE DEBTOR AND THE U.S.
14                                     DEPARTMENT OF HEALTH AND
                                       HUMAN SERVICES AND ITS CENTERS
15                                     FOR MEDICARE AND MEDICAID
                                       SERVICES**

16
                                       **Hearing**:
17                                     Date:     March 4, 2015
                                       Time:     2:00 p.m.
18                                     Place:    Courtroom 6C
                                                 411 West Fourth Street
19                                               Santa Ana, CA  92701-4593
                                       Judge:    Hon. Mark S. Wallace
20

21        Gordian Medical, Inc., the debtor and debtor in possession (the "Debtor"), and the United

22 States on Behalf of the U.S. Department of Health & Human Services ("HHS"), and its designated

23 component, the Centers for Medicare and Medicaid Services ("CMS") ("HHS" and "CMS"

24 collectively referred to as "CMS") (the "Debtor" together with "CMS" shall be collectively referred

25 to as the "Parties") by and through their respective counsel, hereby stipulate and agree (the

26 "Settlement Agreement") as follows in accordance with the following recitals:

27

28

                                        1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

**RECITALS**

A.     On February 24, 2012, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

B.     On September 7, 2012, CMS filed claim numbers 51-1, 51-2 and 52-1 (the "CMS Claims"), asserting a prepetition right to payment of no less than $76 million.  The Debtor objected to the CMS Claim in its Motion for Order Disallowing Claim Nos. 51-1, 51-2 and 52-1 Filed by the United States on Behalf of the U.S. Department Of Health & Human Services (the "CMS Claim Objection") [Docket No. 742].  The hearing on the CMS Claim Objection has been continued numerous times pending negotiation and resolution of the CMS Claims and the CMS Claim Objection.  Pursuant to a stipulation between the Parties [Docket No. 1321], and subsequent orders of the Court, the hearing on the CMS Claim Objection is now scheduled for March 4, 2015.

C.     The Debtor filed its Plan of Reorganization [Dated August 23, 2013] (the "Original Plan") [Docket No. 685] on August 23, 2013.  The hearing on confirmation of the Original Plan was continued numerous times [Docket No. 893] in order to facilitate a resolution of the disputes between the Debtor and the various government entities described above.  On January 13, 2015, the Debtor filed its Debtor's First Amended Plan of Reorganization [Dated January 13, 2015] (the "Plan") [Docket No. 1395].  The Plan provides for the payment of all Allowed Claims[2] in full on the later of the Effective Date and the date upon which a Claim becomes an Allowed Claim.  The Debtor intends to fund payments required under the Plan, including payments to be made to CMS pursuant to the Settlement Agreement, from the Debtor's Cash on hand as of the Effective Date and a contribution to be made by Gerald Del Signore, the President of the Debtor.

**STIPULATION**

The undersigned Parties hereby stipulate and agree as follows:

1.     The Debtor shall assume its supplier agreement with CMS pursuant to 11 U.S.C. §365 and as a cure shall pay CMS $35 million in principal, plus interest accruing at the post-judgment interest rate set by 28 U.S.C. § 1961, as adjusted annually on each anniversary of Court

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

approval of this settlement (the "Settlement Amount"), plus comply with all other provisions of this Settlement Agreement.

2.    At confirmation of the Plan or any subsequently filed plan of reorganization, the Debtor shall pay $5 million to CMS (the "Initial Payment"), of which $1 million shall be applied to repay the advance CMS made to the Debtor pursuant to the *Order Approving Stipulation Between Debtor And The United States Of America Extending The Terms Of The Standstill Agreement Dated March 29, 2012* [Docket No. 696] (the "Stand-Still Agreement").  The Initial Payment shall (a) be made to CMS by electronic funds transmission pursuant to wire instructions provided by the U.S. Department of Justice ("DOJ"), and (b) be credited as a payment against the Settlement Amount. The Parties agree that this provision does not modify, impair or otherwise limit CMS's right under the Stand-Still Agreement to recoup the $1 million advance until it is paid in full, in the event this Settlement Agreement is not approved by the Court or the Initial Payment is not made by the Debtor.

3.    CMS shall recoup the $4,606,761 which CMS has administratively frozen and is currently holding in the Medicare Trust Fund account.  This recoupment shall be credited as a payment against the Settlement Amount.

4.    After the payments made pursuant to paragraphs 2 and 3 above, the remaining unpaid amount of the Settlement Amount of approximately $25.4 million shall be paid through recoupment by CMS in monthly recoupments of approximately $305,066 (the "Monthly Recoupment") from payments to the Debtor in the ordinary course of business via recoupment or offset according to applicable CMS regulations, policies and procedures over the eighty-four months following confirmation of the Plan.

5.    Amounts recouped or otherwise applied to the Settlement Amount by CMS pursuant to paragraph 14(b)(3) shall be credited against the total Settlement Amount owed, but shall not result in a re-calculation of the amount of the Monthly Recoupment, which may, therefore, result in the total Settlement Amount being paid in full in less than 84 months.

6.    The Debtor may elect to pay off the Settlement Amount in full at any time without any pre-payment penalty or other additional obligation.

7.    In the event there are insufficient funds being paid from CMS to the Debtor in any

3

particular month to allow for recoupment of the Monthly Recoupment in full, the Debtor shall make up the difference through an electronic funds transfer to the DOJ (on behalf of CMS) to be paid no later than the 15th day of the following month.  In the event that on December 31st of any given year the amount paid through electronic funds transfer or recoupment is not equal to twelve (12) times the Monthly Recoupment, the Debtor shall make up the difference through an electronic funds transfer to  the DOJ (on behalf of CMS) on the 15th of January the following year.  If annual adjustment of the Settlement Amount due to changes in the post-judgment interest rate causes the Settlement Amount to remain partially unpaid at the conclusion of the original 84 months, CMS may recover the remainder of the Settlement Amount via recoupment or offset of no more than $150,000 per month thereafter until the entire Settlement Amount is fully satisfied.

8.    In the event that the Debtor, or a substantial portion thereof, is sold at any time after the effective date of this Settlement Agreement, within thirty (30) days of such sale, the Debtor shall pay the outstanding balance of the Settlement Amount to CMS, by electronic funds transmission pursuant to instructions to be provided by the DOJ, unless (a) the buyer agrees to assume and discharge the terms of this Settlement Agreement and (b) CMS and the DOJ consent, which consent shall not unreasonably be withheld, pursuant to applicable rules and regulations, to allow the buyer to assume and discharge the Debtor's obligations under this Settlement Agreement.

9.    If the Debtor defaults under the terms of this Settlement Agreement, and such default is not timely cured within fifteen (15) business days after written notification to the Debtor of the alleged default, the provisions of paragraph 18 below shall apply.

10.    The Settlement Amount shall be secured by a first priority security interest in all of the Debtor's assets and shall be evidenced by a promissory note, security agreement and UCC financing statements.

11.    The Debtor generally agrees to abide by the Medicare laws, regulations and program instructions that apply to its claim submissions.

12.    The Debtor further specifically agrees that it will not submit claims for dressings in conjunction with gastrostomy sites for payment (which includes claims with service dates with postpetition dates of service).

4

13.     The Debtor also specifically agrees not to misuse the "A" modifiers on its claims. CMS's surgical dressing's policy mandates the use of Modifiers A1-A9 to indicate that a particular item is being used as a primary or secondary dressing on a surgical or debrided wound and to indicate the number of wounds on which the dressings are being used.

14.     Appeals.

(a)     Prepetition Dates of Service.  The Debtor agrees to withdraw all claims currently on appeal with prepetition dates of service (the "Prepetition Appeals").

(b)     Postpetition Dates of Service.

(1)     Debtor agrees to withdraw all claims currently on administrative appeal that relate to claims for dressings in conjunction with gastrostomy sites.  For the remaining claims with postpetition dates of service currently on appeal at the Administrative Law Judge ("ALJ") level the parties' will agree to request consolidation of appeals and to use statistical sampling where a case-by-case review is not administratively feasible or practical in accordance with the applicable CMS regulations, policies and procedures.

(2)     CMS will not oppose any efforts by the Debtor to have any hearings on postpetition claims be held at the Irvine office of the Office of Medicare Hearings and Appeals.

(3)     If this proceeding determines that the Debtor's previously denied claims are entitled to be paid in full or in part, CMS will offset, by recoupment or other withholding, one-half (1/2) of any payments to be made pursuant to the decision against any portion of the Settlement Amount still owed to CMS by the Debtor under this Settlement Agreement.

(4)     All other "appeals" (i.e., claims with postpetition dates of service but not at the ALJ level on the effective date of the settlement) will be resolved in the ordinary course of business.

(5)     For so long as the Debtor's appeals volume remains at levels substantially similar to, or higher than, those now experienced, the above appeals process will be used from time to time to resolve all of Debtor's claims' appeals.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:280210.3 03717/002

(6)    CMS agrees to use best efforts to process all appeals in accordance with the time limits set forth in the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, Public Law 106-554.

15.    Subject to the exceptions in the following paragraph (concerning excluded claims), and conditioned upon (a) the Debtor making the payments as provided for in this Settlement Agreement, (b) continued processing of those claims and appeals against CMS described in paragraph 14 above, and (c) the Debtor not being in default of any provision in this Settlement Agreement, CMS shall release the Debtor from Medicare overpayment liability claims for the time period January 1, 2009 through March 31, 2014 (including without limitation any claims that are asserted by CMS in the claims filed by the United States on Behalf of the U.S. Department of Health & Human Services, and its designated component, CMS, which were assigned Claim Nos. 51-1, 51-2 and 52-1 on the claims register of the Debtor's bankruptcy case). All CMS claims arising after March 31, 2014 (i) will not be discharged or released by the Debtor's plan, confirmation order or otherwise; (ii) CMS will not be enjoined from collecting those claims; and (iii) CMS will not be required to file an administrative expense claim with the Court to be paid on those claims.

16.    Notwithstanding the releases, waivers and compromises granted in this Settlement Agreement, the following rights and claims of the United States are specifically reserved:

(a)    Any right and claim of any federal agency other than CMS;

(b)    Any liability under Title 26, U.S. Code (Internal Revenue Code);

(c)    Any liability for fraud;

(d)    Any liability under the False Claims Act, 31 U.S.C. §§3729-3733; the Civil Monetary Penalties law, 42 U.S.C. §§1320(a)-7(a); and the Program Fraud Civil Remedies Act, 31 U.S.C. §§3801-3812;

(e)    Any liability based upon obligations created by this Agreement;

(f)    Any express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods or services; and

(g)    Any rights and claims by the United States against any non-debtor, i.e. any person or entity other than the Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

6

17.    If after the Debtor confirms a plan in this bankruptcy case, or this bankruptcy case is dismissed or closed, and a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of the debtor's debts, or seeking to adjudicate the Debtor as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for the Debtor or for all or any substantial part of the Debtor's assets, the Debtor agrees as follows:

(a)    The Debtor shall immediately seek to dismiss the case with prejudice;

(b)    This Settlement Agreement shall be honored;

(c)    The Debtor's obligations under this Settlement Agreement shall not be avoided;

(d)    If the Debtor's obligations are avoided for any reason, the United States, at its sole option, may rescind the releases in this Settlement Agreement and bring whatever claims, actions or proceedings it chooses against the Debtor, including, without limitation, all claims, actions or proceedings covered by the releases;

(e)    The Debtor agrees that any such actions, claims or proceedings are not covered by the automatic stay pursuant to 11 U.S.C. §362(a) and that the Debtor will not move to enjoin such claims, actions or proceedings on that basis;

(f)    The Debtor shall not plead, argue, or otherwise raise any defenses under theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within ninety (90) calendar days of written notification to the Debtor that the releases have been rescinded; and

(g)    The Debtor agrees that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Settlement Agreement.

18.    In the event that the Debtor fails to pay or permit CMS to recoup or setoff the Monthly Recoupment or otherwise defaults under this Settlement Agreement and the Debtor fails to cure any such default within fifteen (15) days of written notice to the Debtor, then the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at post-judgment interest rate set by 28 U.S.C. §1961 per annum compounded daily (the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

7

"Remaining Settlement Amount and Default Interest Balance") from the date of default until all amounts due have been paid in full.  The Debtor shall consent to a Consent Judgment in the amount of the Remaining Settlement Amount and Default Interest Balance ("Gordian Consent Judgment") and the United States may (a) offset the Gordian Consent Judgment from any amounts due and owing to the Debtor by any department, agency, or agent of the United States; (b) collect the entire Remaining Settlement Amount and Default Interest Balance, and all other amounts due upon the event of default; or (c) exercise any other rights or claims granted by law or in equity.  The Debtor agrees (i) not to contest any consent judgment, recoupment or setoff imposed by the United States to recover amounts owed under this settlement, and (ii) not to contest and hereby waives, releases and discharges any defenses to collection of amounts owed under this settlement undertaken by the United States or its agents or contractors, either administratively or in any state or federal court, provided however that the United States has not caused the default to occur by failing to adhere to its obligations under this Settlement Agreement or under the applicable provisions of the Medicare Act, in which case the Debtor shall be permitted to assert such defenses in the Court as part of an action to enforce the terms of the Settlement Agreement.  In the event of a default, the Debtor shall pay the United States all reasonable costs of collection and enforcement of this settlement, including, without limitation, attorneys' fees and expenses ("Collection Costs").

19.    In the event of default by the Debtor under this Settlement Agreement, and if the Debtor fails to cure any alleged default within thirty (30) days of written notification of the alleged default, CMS may suspend the Debtor's Medicare supplier agreement and any and all agreements related thereto, or exclude the Debtor from further participation in the Medicare Program, pursuant to applicable statutes and regulations, unless and until the Debtor pays the then remaining Settlement Amount and Default Interest Balance and Collection Costs to CMS and otherwise timely cures any and all existing defaults.

20.    The Debtor shall not alter, modify or amend in any way any of the terms of this Settlement Agreement through a plan of reorganization, confirmation order or otherwise.  To the extent of any inconsistency with any document related to this case or to the extent of any ambiguity, the terms of this Settlement Agreement shall control any and all disputes between the Parties.

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

21.    Each party hereto agrees that it has fully participated in the drafting of this Settlement Agreement.  The rule of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Settlement Agreement or any of its provisions.

22.    This is the full and complete Settlement Agreement of the parties, and each party has entered into this Settlement Agreement voluntarily and without duress.  This agreement may not be amended without the express prior written consent of the parties.

23.    Any disputes regarding this Settlement Agreement shall be governed by federal law.

24.    This Settlement Agreement is binding on the Parties' successors and assigns.

25.    Each party shall bear its own costs and expenses, including attorneys' fees, in connection with the negotiation, preparation and performance of this Settlement Agreement.

26.    This agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

27.    This Settlement Agreement is subject to the approval of CMS, the DOJ and the Court and is of no force and effect until approved.  The Parties shall however stay any litigation against each other while approval is pending, and unless and until this Settlement Agreement has been denied approval.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

9

28.    CMS shall cause the Durable Medical Equipment Medicare Administrative

Contractor ("DME-MAC"), Zone Program Integrity Contractors ("ZPIC") and Administrative

Qualified Independent Contractors ("AdQIC")'s for all four regions to process the Debtor's claims

in accordance with applicable policy and guidelines, including but not limited to the Local Coverage

Determination, the Medicare Claims Processing Manual (100-4), and the Medicare Program

Integrity Manual (100-8).

Dated:   February __, 2015                    PACHULSKI STANG ZIEHL & JONES LLP


By: _____
        Samuel R. Maizel

        Attorneys for Gordian Medical, Inc., dba American
        Medical Technologies

Dated:   February__, 2015                    U.S. DEPARTMENT OF JUSTICE
                                             CIVIL DIVISION
                                             COMMERCIAL LITIGATION BRANCH



By:_____
        Stuart F. Delery, Acting Associate Attorney
        General
        John T. Stemplewicz, Acting Director, Civil
        Division
        Tracy J. Whitaker, Assistant Director
        Seth B. Shapiro, Trial Attorney (D.C. Bar
        No. 433988)

        Attorneys for the United States of America, on
        behalf of the United States Department of Health
        and Human Services and the Centers for Medicare
        and Medicaid Services

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13ᵗʰ Floor, Los Angeles, California  90067**


A true and correct copy of the foregoing document entitled (*specify*):  ***NOTICE OF MOTION AND MOTION OF DEBTOR FOR ORDER APPROVING SETTLEMENT BETWEEN THE DEBTOR AND THE UNITED STATES OF AMERICA, ACTING THROUGH THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES AND THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GERALD DEL SIGNORE IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 11, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **February 11, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 11, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

By Overnight Mail
Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 11, 2015 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- *Todd M Bailey    todd.bailey@ftb.ca.gov*
- *Frank Cadigan    frank.cadigan@usdoj.gov*
- *Lisa W Chao    lisa.chao@doj.ca.gov*
- *Robert F Conte    robert.conte@usdoj.gov*
- *Rebecca L Daum    kenise_taylor@tax.state.oh.us*
- *M Douglas Flahaut    flahaut.douglas@arentfox.com*
- *Marshall F Goldberg    mgoldberg@glassgoldberg.com*
- *Michael I Gottfried    mgottfried@lgbfirm.com,
  ncereseto@lgbfirm.com;kalandy@lgbfirm.com;marizaga@lgbfirm.com;cboyias@lgbfirm.com;rspahnn@lgbfirm.com*
- *Michael J Hauser    michael.hauser@usdoj.gov*
- *Michael R Hickman    mhickman@cwlawyers.com,
  ymolinar@cwlawyers.com;dvillamar@cwlawyers.com;ecline@cwlawyers.com*
- *Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com*
- *Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com*
- *Jeffrey L Kandel    jkandel@pszjlaw.com*
- *Teddy M Kapur    tkapur@pszjlaw.com*
- *Joseph W Kots    jkots@state.pa.us*
- *Rodger M Landau    rlandau@lgbfirm.com, marizaga@lgbfirm.com;kalandy@lgbfirm.com*
- *Rodger M Landau    rlandau@lgbfirm.com, marizaga@lgbfirm.com;kalandy@lgbfirm.com*
- *Mary D Lane    mal@msk.com, mec@msk.com*
- *Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com*
- *Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com*
- *Michael K Murray    mkmurray@lanak-hanna.com*
- *Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com*
- *Penelope Parmes    penelope.parmes@troutmansanders.com*
- *Misty A Perry Isaacson    , ecf@ppilawyers.com*
- *Daniel H Reiss    dhr@lnbyb.com*
- *Seth B Shapiro    seth.shapiro@usdoj.gov*
- *United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov*
- *Jeanne C Wanlass    jwanlass@loeb.com, karnote@loeb.com;ladocket@loeb.com*
- *David J Warner    David.J.Warner@irscounsel.treas.gov*
- *Elizabeth Weller    dallas.bankruptcy@publicans.com*
- *Brian D Wesley    brian.wesley@doj.ca.gov*
- *Rebecca J Winthrop    rebecca.winthrop@nortonrosefulbright.com, darla.rodrigo@nortonrosefulbright.com*

2. **SERVED BY UNITED STATES MAIL**:

**AMERICAN MEDICAL TECHNOLOGIES**
**Chapter 11 Case No.: 8:12-bk-12339-MW**
**2002 Service List**

**Debtor**
Gerald Del Signore
Chief Executive Officer
American Medical Technologies,
  dba Gordian Medical, Inc.
17595 Cartwright Road
Irvine, CA 92614

Michael D. Watson
Vice President-Governmental Affairs
American Medical Technologies,
  dba Gordian Medical, Inc.
17595 Cartwright Road
Irvine, CA 92614

**Financial Advisor**
Kerry Krisher
GlassRatner Advisory & Capital Group LLC
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612

David R. Simon, Esq.
Vice President and General Counsel
American Medical Technologies,
dba Gordian Medical, Inc.
17595 Cartwright Road
Irvine, CA 92614

Office of the United States Trustee
Michael Hauser, Esq.
411 West Fourth Street, Suite 9041
Santa Ana, CA  92701-4593

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:251839.3 03717/002

**F 9013-3.1.PROOF.SERVICE**

Special Tax Counsel for Debtor
Lance N. Jurich / Christopher W. Campbell
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA  90067

Counsel to Gerald Del Signore
Penelope Parmes
Troutman Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545

Counsel for the IRS
David J. Warner
Assistant U.S. Attorney
24000 Avila Road, Suite 4404
Mail Stop 8800
Laguna Niguel, CA  92677

Angela M. Belgrove
Assistant Regional Counsel
Office of the General Counsel
US Dept. of HHS
90 7th Street, Suite 4-500
San Francisco, CA 94103-6705

Counsel for CMS
Seth B. Shapiro, Trial Attorney
U.S. Department of Justice – Civil Division
Commercial Litigation Branch
1100 L Street, NW – 10th Floor
P.O. Box 875 - Ben Franklin Station
Washington, D.C. 20044

Regulatory Counsel
Fulbright & Jaworski LLP
Attn:  Frederick (Rick) Robinson
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2633

**Requests for Special Notice**

Counsel for DeRoyal Industries, Inc.
Pagter and Perry Isaacson, APLC
Misty Perry Isaacson
525 N. Cabrillo Park Drive
Suite 104
Santa Ana, CA 92701

Joseph Kots
Department of Labor and Industry
Reading Bankruptcy and Compliance Unit
625 Cherry Street, Room 203
Reading, PA  19602-1152

Counsel for Creditor Medline Industries, Inc.
M. Douglas Flahaut
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Counsel for Creditor Medline Industries, Inc.
Robert M. Hirsch
Arent Fox LLP
1675 Broadway
New York, NY 10019-5820

Michael E. Large
Large & Associates
529 Alabama Street
Bristol, TN  37620

Rebecca Adelman
Adelman Law Firm, PLLC
545 South Main Street, Room 111
Memphis, TN  38103

Jeffrey Schlapp
Horwitz, Horwitz & Associates, Ltd.
25 East Washington, Suite 900
Chicago, IL  60602

Jason M. Crowder
Corporate Counsel
Petersen Healthcare, Inc.
830 West Trailcreek Drive
Peoria, IL  61614

Riverside Claims LLC
Neil Herskowitz
PO Box 626
Planetarium Station
New York, NY 10024

Pioneer Credit Recovery, Inc.
26 Edward St.
Arcade, NV  14009

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:251839.3 03717/002

**F 9013-3.1.PROOF.SERVICE**