Samuel R. Maizel (CA Bar No. 189301)
Malhar S. Pagay (CA Bar No. 189289)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:        smaizel@pszjlaw.com
               mpagay@pszjlaw.com

Attorneys for Gordian Medical, Inc.,
dba American Medical Technologies,
Debtor and Debtor in Possession



FILED & ENTERED

MAY 08 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>GORDIAN MEDICAL, INC., dba American Medical Technologies,<br><br><br><br>Debtor | Case No.: 8:12-bk-12339-MW<br><br>Chapter 11<br><br>**ORDER APPROVING SETTLEMENT BETWEEN THE DEBTOR AND THE UNITED STATES OF AMERICA, ACTING THROUGH THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES AND THE CENTERS FOR MEDICARE AND MEDICAID SERVICES**<br><br>**[Relates to Docket No. 1418]**<br><br>**Hearing Date:**<br>**Date:**    May 6, 2015<br>**Time**    2:00 p.m.<br>**Place:**   Courtroom 6C<br>        411 West Fourth Street<br>        Santa Ana, CA  92701<br>**Judge:**   **Hon. Mark Wallace** |

The Court has considered the Motion for Order Approving Settlement Between the Debtor

and the United States of America, Acting Through the United States Department of Health and

Human Services and the Centers for Medicare and Medicaid Services (the "CMS Settlement

Motion") [Docket No.1418] filed by Gordian Medical, Inc. dba American Medical Technologies, the

debtor and debtor in possession in the above-captioned case (the "Debtor").  Unless otherwise

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

defined herein, capitalized terms have the meaning ascribed to them in the CMS Settlement Motion.

Samuel R. Maizel of Pachulski Stang Ziehl & Jones LLP appeared on behalf of the Debtor.  Seth

Shapiro of the United States Department of Justice appeared on behalf of the United States of

America, the United States Department of Health and Human Services, and the Centers for Medicare

and Medicaid Services.  Other appearances were made as reflected in the record.  Based upon the

Court's review and consideration of the CMS Settlement Motion, the other records and pleadings

filed in the case, the Revised Settlement Agreement in the form of a stipulation filed on April 30,

2015 [Docket No. 1473] (the Stipulation"), and the statements of counsel at the hearing on the

Motion, and no objections having been filed and good cause appearing therefor**,**

**IT IS HEREBY ORDERED:**

1.    The CMS Settlement Motion is granted.

2.    The Debtor is authorized to enter into the Revised Settlement Agreement (a form of

which is attached hereto as **Exhibit 1**) and take any and all actions reasonably necessary to

effectuate the Settlement Agreement.

3.    The Bankruptcy Court shall retain jurisdiction to hear all disputes arising from this

Order or the Revised Settlement Agreement

###

Date: May 8, 2015

Mark S. Wallace
United States Bankruptcy Judge

2

1    SAMUEL R. MAIZEL (CA BAR NO. 189301)
    PACHULSKI STANG ZIEHL & JONES LLP
2    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA  90067
3    Telephone: 310/277-6910
    Facsimile: 310/201-0760
4    E-mail:  smaizel@pszjlaw.com

5    Attorneys for Gordian Medical, Inc., dba American
    Medical Technologies

6

7

8                 **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

                     **SANTA ANA DIVISION**

10

11    In re:                             Case No.:  08:12-bk-12339-MW
                                  Chapter 11
12    GORDIAN MEDICAL, INC., d/b/a
    AMERICAN MEDICAL TECHNOLOGIES      **STIPULATION OF SETTLEMENT**
13                           **BETWEEN GORDIAN MEDICAL INC.,**
                Debtor.         **DEBTOR, AND THE U.S. DEPARTMENT**
14                          **OF HEALTH AND HUMAN SERVICES**
                         **AND ITS CENTERS FOR MEDICARE**
15                          **AND MEDICAID SERVICES**

16                          **Hearing**:
                        Date:     May 6, 2015
17                          Time:     2:00 p.m.
                        Place:     Courtroom 6C
18                                   411 West Fourth Street
                                 Santa Ana, CA  92701-4593
19                          Judge:     Hon. Mark S. Wallace

20

21         Gordian Medical, Inc., the debtor and debtor in possession (the "Debtor"), and the United

22  States on Behalf of the U.S. Department of Health & Human Services ("HHS"), and its designated

23  component, the Centers for Medicare and Medicaid Services ("CMS") ("HHS" and "CMS"

24  collectively referred to as "CMS") (the Debtor together with CMS shall be collectively referred to as

25  the "Parties") by and through their respective counsel, hereby stipulate and agree (the "Settlement

26  Agreement") as follows in accordance with the following recitals:

27

28

    PACHULSKI STANG ZIEHL & JONES LLP
        ATTORNEYS AT LAW
        LOS ANGELES, CA

**RECITALS**

A.    On February 24, 2012, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

B.    On September 7, 2012, CMS filed claim numbers 51-1, 51-2 and 52-1 (the "CMS Claims"), asserting a prepetition right to payment of no less than $76 million.  The Debtor objected to the CMS Claim in its Motion for Order Disallowing Claim Nos. 51-1, 51-2 and 52-1 Filed by the United States on Behalf of the U.S. Department Of Health & Human Services (the "CMS Claim Objection") [Docket No. 742].  The hearing on the CMS Claim Objection has been continued numerous times pending resolution of the disputes between the Debtor and CMS.  Pursuant to various stipulations between the Parties and subsequent orders of the Court, the hearing on the CMS Claim Objection is now scheduled for May 6, 2015.

C.    The Debtor filed its original *Plan of Reorganization [Dated August 23, 2013]* (the "Original Plan") [Docket No. 685], then filed its *Debtor's First Amended Plan of Reorganization [Dated January 13, 2015]* (the "First Amended Plan") [Docket No. 1395], and then filed its Debtor's *Second Amended Plan of Reorganization [Dated April 27, 2015]* (the "Plan") [Docket No. 1465]. The hearing on confirmation of the various proposed plans of reorganization have been continued numerous times in order to, among other reasons, facilitate a resolution of the disputes between the Debtor and CMS.  The Plan provides for the payment of all Allowed Claims[1] in full on the later of the Effective Date and the date upon which a Claim becomes an Allowed Claim.  The Debtor intends to fund payments required under the Plan, including payments to be made to CMS pursuant to the Settlement Agreement, from the Debtor's Cash on Hand as of the Effective Date and a Contribution to be made by Mr. Gerald Del Signore, the President of the Debtor.

**STIPULATION**

The undersigned Parties hereby stipulate and agree as follows:

1.    The Debtor shall assume its supplier agreement with CMS pursuant to 11 U.S.C.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

DOCS_LA:288336.2 03717/002

§365 and as a cure shall pay CMS $35 million in principal, plus interest accruing at the post-judgment interest rate set by 28 U.S.C. §1961, as adjusted annually on each anniversary of Court approval of this settlement (the "Settlement Amount"), plus comply with all other provisions of this Settlement Agreement.

2.      At confirmation of the Plan or any subsequently filed plan of reorganization, the Debtor shall pay $5 million to CMS (the "Initial Payment"), of which $1 million shall be applied to repay the advance CMS made to the Debtor pursuant to the *Order Approving Stipulation Between Debtor And The United States Of America Extending The Terms Of The Standstill Agreement Dated March 29, 2012* [Docket No. 696] (the "Stand-Still Agreement").  The Initial Payment shall (a) be made to CMS by electronic funds transmission pursuant to wire instructions provided by the U.S. Department of Justice ("DOJ"), and (b) be credited as a payment against the Settlement Amount. The Parties agree that this provision does not modify, impair or otherwise limit CMS's right under the Stand-Still Agreement to recoup the $1 million advance until it is paid in full, in the event this Settlement Agreement is not approved by the Court or the Initial Payment is not made by the Debtor.

3.      CMS shall recoup the $4,606,761 which CMS has administratively frozen and is currently holding in the Medicare Trust Fund account.  This recoupment shall be credited as a payment against the Settlement Amount.

4.      After the payments made pursuant to paragraphs 2 and 3 above, the remaining unpaid amount of the Settlement Amount of approximately $25.4 million shall be paid through recoupment by CMS in monthly recoupments of approximately $305,066 (the "Monthly Recoupment") from payments to the Debtor in the ordinary course of business via recoupment or offset according to applicable CMS regulations, policies and procedures over the eighty-four months following confirmation of the Plan.

5.      Amounts recouped or otherwise applied to the Settlement Amount by CMS pursuant to paragraph 14(b)(3) shall be credited against the total Settlement Amount owed, but shall not result in a re-calculation of the amount of the Monthly Recoupment, which may, therefore, result in the total Settlement Amount being paid in full in less than 84 months.

DOCS_LA:288336.2 03717/002

6.      The Debtor may elect to pay off the Settlement Amount in full at any time without any pre-payment penalty or other additional obligation.

7.      In the event there are insufficient funds being paid from CMS to the Debtor in any particular month to allow for recoupment of the Monthly Recoupment in full, the Debtor shall make up the difference through an electronic funds transfer to the DOJ (on behalf of CMS) to be paid no later than the 15th day of the following month.  In the event that on December 31st of any given year the amount paid through electronic funds transfer or recoupment is not equal to twelve (12) times the Monthly Recoupment, the Debtor shall make up the difference through an electronic funds transfer to  the DOJ (on behalf of CMS) on the 15th of January the following year.  If annual adjustment of the Settlement Amount due to changes in the post-judgment interest rate causes the Settlement Amount to remain partially unpaid at the conclusion of the original 84 months, CMS may recover the remainder of the Settlement Amount via recoupment or offset of no more than $150,000 per month thereafter until the entire Settlement Amount is fully satisfied.

8.      In the event that the Debtor, or a substantial portion thereof, is sold at any time after the effective date of this Settlement Agreement, within thirty (30) days of such sale, the Debtor shall pay the outstanding balance of the Settlement Amount to CMS, by electronic funds transmission pursuant to instructions to be provided by the DOJ, unless (a) the buyer agrees to assume and discharge the terms of this Settlement Agreement and (b) CMS and the DOJ consent, which consent shall not unreasonably be withheld, pursuant to applicable rules and regulations, to allow the buyer to assume and discharge the Debtor's obligations under this Settlement Agreement.

9.      If the Debtor defaults under the terms of this Settlement Agreement, and such default is not timely cured within fifteen (15) business days after written notification to the Debtor of the alleged default, the provisions of paragraph 18 below shall apply.

10.      The Settlement Amount shall be secured by a first priority security interest in all of the Debtor's assets and shall be evidenced by a promissory note, security agreement and UCC financing statements.

11.      The Debtor generally agrees to abide by the Medicare laws, regulations and program instructions that apply to its claim submissions.

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

12.    The Debtor further specifically agrees that it will not submit claims for dressings in conjunction with gastrostomy sites for payment (which includes claims with service dates with postpetition dates of service).

13.    The Debtor also specifically agrees not to misuse the "A" modifiers on its claims. CMS's surgical dressing's policy mandates the use of Modifiers A1-A9 to indicate that a particular item is being used as a primary or secondary dressing on a surgical or debrided wound and to indicate the number of wounds on which the dressings are being used.

14.    Appeals.

(a)    Prepetition Dates of Service.  The Debtor agrees to withdraw all claims currently on appeal with prepetition dates of service (the "Prepetition Appeals").

(b)    Postpetition Dates of Service.

(1)    Debtor agrees to withdraw all claims currently on administrative appeal that relate to claims for dressings in conjunction with gastrostomy sites.  For the remaining claims with postpetition dates of service currently on appeal at the Administrative Law Judge ("ALJ") level the parties' will agree to request consolidation of appeals and to use statistical sampling where a case-by-case review is not administratively feasible or practical in accordance with the applicable CMS regulations, policies and procedures.

(2)    CMS will not oppose any efforts by the Debtor to have any hearings on postpetition claims be held at the Irvine office of the Office of Medicare Hearings and Appeals.

(3)    If this proceeding determines that the Debtor's previously denied claims are entitled to be paid in full or in part, CMS will offset, by recoupment or other withholding, one-half (1/2) of any payments to be made pursuant to the decision against any portion of the Settlement Amount still owed to CMS by the Debtor under this Settlement Agreement.

(4)    All other "appeals" (i.e., claims with postpetition dates of service but not at the ALJ level on the effective date of the settlement) will be resolved in the ordinary course of business.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:288336.2 03717/002

(5)    For so long as the Debtor's appeals volume remains at levels substantially similar to, or higher than, those now experienced, the above appeals process will be used from time to time to resolve all of Debtor's claims' appeals.

(6)    CMS agrees to use best efforts to process all appeals in accordance with the time limits set forth in the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000, Public Law 106-554.

15.    Subject to the exceptions in the following paragraph (concerning excluded claims), and conditioned upon (a) the Debtor making the payments as provided for in this Settlement Agreement, (b) continued processing of those claims and appeals against CMS described in paragraph 14 above, and (c) the Debtor not being in default of any provision in this Settlement Agreement, CMS shall release the Debtor from Medicare overpayment liability claims for the time period January 1, 2009 through March 31, 2014 (including without limitation any claims that are asserted by CMS in the claims filed by the United States on Behalf of the U.S. Department of Health & Human Services, and its designated component, CMS, which were assigned Claim Nos. 51-1, 51-2 and 52-1 on the claims register of the Debtor's bankruptcy case).  All CMS claims arising after March 31, 2014 (i) will not be discharged or released by the Debtor's Plan, confirmation order or otherwise; (ii) CMS will not be enjoined from collecting those claims; and (iii) CMS will not be required to file an administrative expense claim with the Court to be paid on those claims.

16.    Notwithstanding the releases, waivers and compromises granted in this Settlement Agreement, the following rights and claims of the United States are specifically reserved:

(a)    Any right and claim of any federal agency other than CMS;

(b)    Any liability under Title 26, U.S. Code (Internal Revenue Code);

(c)    Any liability for fraud;

(d)    Any liability under the False Claims Act, 31 U.S.C. §§3729-3733; the Civil Monetary Penalties law, 42 U.S.C. §§1320(a)-7(a); and the Program Fraud Civil Remedies Act, 31 U.S.C. §§3801-3812;

(e)    Any liability based upon obligations created by this Agreement;

(f)    Any express or implied warranty claims or other claims for defective or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

deficient products or services, including quality of goods or services; and

(g)     Any rights and claims by the United States against any non-debtor, i.e. any person or entity other than the Debtor.

17.     If after the Debtor confirms a plan in this bankruptcy case, or this bankruptcy case is dismissed or closed, and a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of the debtor's debts, or seeking to adjudicate the Debtor as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for the Debtor or for all or any substantial part of the Debtor's assets, the Debtor agrees as follows:

(a)     The Debtor shall immediately seek to dismiss the case with prejudice;

(b)     This Settlement Agreement shall be honored;

(c)     The Debtor's obligations under this Settlement Agreement shall not be avoided;

(d)     If the Debtor's obligations are avoided for any reason, the United States, at its sole option, may rescind the releases in this Settlement Agreement and bring whatever claims, actions or proceedings it chooses against the Debtor, including, without limitation, all claims, actions or proceedings covered by the releases;

(e)     The Debtor agrees that any such actions, claims or proceedings are not covered by the automatic stay pursuant to 11 U.S.C. §362(a) and that the Debtor will not move to enjoin such claims, actions or proceedings on that basis;

(f)     The Debtor shall not plead, argue, or otherwise raise any defenses under theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within ninety (90) calendar days of written notification to the Debtor that the releases have been rescinded; and

(g)     The Debtor agrees that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Settlement Agreement.

18.     In the event that the Debtor fails to pay or permit CMS to recoup or setoff the Monthly Recoupment or otherwise defaults under this Settlement Agreement and the Debtor fails to

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

cure any such default within fifteen (15) days of written notice to the Debtor, then the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at post-judgment interest rate set by 28 U.S.C. §1961 per annum compounded daily (the "Remaining Settlement Amount and Default Interest Balance") from the date of default until all amounts due have been paid in full.  The Debtor shall consent to a Consent Judgment in the amount of the Remaining Settlement Amount and Default Interest Balance ("Gordian Consent Judgment") and the United States may (a) offset the Gordian Consent Judgment from any amounts due and owing to the Debtor by any department, agency, or agent of the United States; (b) collect the entire Remaining Settlement Amount and Default Interest Balance, and all other amounts due upon the event of default; or (c) exercise any other rights or claims granted by law or in equity.  The Debtor agrees (i) not to contest any consent judgment, recoupment or setoff imposed by the United States to recover amounts owed under this settlement, and (ii) not to contest and hereby waives, releases and discharges any defenses to collection of amounts owed under this settlement undertaken by the United States or its agents or contractors, either administratively or in any state or federal court, provided however that the United States has not caused the default to occur by failing to adhere to its obligations under this Settlement Agreement or under the applicable provisions of the Medicare Act, in which case the Debtor shall be permitted to assert such defenses in the Court as part of an action to enforce the terms of the Settlement Agreement.  In the event of a default, the Debtor shall pay the United States all reasonable costs of collection and enforcement of this settlement, including, without limitation, attorneys' fees and expenses ("Collection Costs").

19.     In the event of default by the Debtor under this Settlement Agreement, and if the Debtor fails to cure any alleged default within thirty (30) days of written notification of the alleged default, CMS may suspend the Debtor's Medicare supplier agreement and any and all agreements related thereto, or exclude the Debtor from further participation in the Medicare Program, pursuant to applicable statutes and regulations, unless and until the Debtor pays the then remaining Settlement Amount and Default Interest Balance and Collection Costs to CMS and otherwise timely cures any and all existing defaults.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

8

20.     The Debtor shall not alter, modify or amend in any way any of the terms of this Settlement Agreement through a plan of reorganization, confirmation order or otherwise.  To the extent of any inconsistency with any document related to this case or to the extent of any ambiguity, the terms of this Settlement Agreement shall control any and all disputes between the Parties.

21.     Each party hereto agrees that it has fully participated in the drafting of this Settlement Agreement.  The rule of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Settlement Agreement or any of its provisions.

22.     This is the full and complete Settlement Agreement of the parties, and each party has entered into this Settlement Agreement voluntarily and without duress.  This agreement may not be amended without the express prior written consent of the parties.

23.     Any disputes regarding this Settlement Agreement shall be governed by federal law.

24.     This Settlement Agreement is binding on the Parties' successors and assigns.

25.     Each party shall bear its own costs and expenses, including attorneys' fees, in connection with the negotiation, preparation and performance of this Settlement Agreement.

26.     This agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

27.     This Settlement Agreement is subject to the approval of CMS, the DOJ and the Court and is of no force and effect until approved.  The Parties shall however stay any litigation against each other while approval is pending, and unless and until this Settlement Agreement has been denied approval.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

9

DOCS_LA:288336.2 03717/002

28.    CMS shall cause the Durable Medical Equipment Medicare Administrative

Contractor ("DME-MAC"), Zone Program Integrity Contractors ("ZPIC") and Administrative

Qualified Independent Contractors ("AdQIC")'s for all four regions to process the Debtor's claims

in accordance with applicable policy and guidelines, including but not limited to the Local Coverage

Determination, the Medicare Claims Processing Manual (100-4), and the Medicare Program

Integrity Manual (100-8).

Dated:   May __, 2015                    PACHULSKI STANG ZIEHL & JONES LLP


                                         By: _____
                                             Samuel R. Maizel

                                             Attorneys for Gordian Medical, Inc., dba American
                                             Medical Technologies

Dated:   May __, 2015                    U.S. DEPARTMENT OF JUSTICE
                                         CIVIL DIVISION
                                         COMMERCIAL LITIGATION BRANCH


                                         By:_____
                                             Stuart F. Delery, Acting Associate Attorney
                                             General
                                             Ruth A. Harvey, Director, Civil Division
                                             Tracy J. Whitaker, Assistant Director
                                             Seth B. Shapiro, Trial Attorney (D.C. Bar
                                             No. 433988)

                                             Attorneys for the United States of America, on
                                             behalf of the United States Department of Health
                                             and Human Services and the Centers for Medicare
                                             and Medicaid Services

DOCS_LA:288336.2 03717/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA